Filed 7/10/26  P. v. Rivera CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>v.<br><br>EDWIN ALEXANDRO RIVERA, JR.,<br><br>　Defendant and Appellant. | 2d Crim. No. B343534<br>(Super. Ct. No. 2024014992)<br>(Ventura County) |

　　Edwin Alexandro Rivera, Jr. appeals a judgment following his conviction for unlawful driving or taking a vehicle (Veh. Code, § 10851, subd. (a); counts 1 & 3), receipt of stolen property (Pen. Code, § 496d, subd. (a); counts 2 & 4) and misdemeanor hit and run driving with property damage.  (Veh. Code, § 20002, subd. (a); count 5).  Appellant was ordered to serve 341 days in jail and he was placed on 24 months of probation.

　　We conclude, among other things, that the trial court's brief interruptions of defense counsel's arguments to the jury, one brief admonishment of defense counsel, and the court's physical

1

movements during defense counsel's oral argument, did not constitute bias or judicial misconduct, and did not deprive appellant of his right to a fair trial.  We will affirm.

FACTUAL AND PROCEDURAL HISTORY

In June of 2024, Maricela Esquivel was a landscaper who owned a Silverado truck with an attached trailer.  The trailer contained equipment for her work.  While doing work, she left the keys to the truck in the vehicle.  When she came back to the truck, she saw that it was gone.  She called 9-1-1.

Shortly thereafter, Beatriz Chavez was in her minivan with her husband.  They were stopped at a traffic light.   Suddenly they were "rear-ended" by the Silverado.  Her husband got out of the van and briefly spoke with the Silverado driver, who was appellant.  The Silverado driver fled the scene.

Randy Rhodes, a retired superior court judge, was driving his vehicle behind the Silverado and saw the "traffic collision." When the Silverado "took off" he "followed it."  Appellant "accelerated" and drove the Silverado "into a culvert" where "the truck and trailer ultimately rested."

Appellant "got out of the truck, ran around the front, [and] went into the trees."  Judge Rhodes followed appellant, caught up with him and had a "conversation" with him.

Appellant told judge Rhodes that it was another person who got out of the Silverado.  Judge Rhodes knew that statement was false because appellant was the only person to exit the Silverado.  Judge Rhodes called 9-1-1.  He stayed with appellant until the police arrived.

Appellant was arrested.  The People charged appellant with the aforementioned five counts.  Appellant pled not guilty.

The case went to trial. While the jury was deliberating, defense counsel requested "to put something on the record briefly before the jury comes in." He claimed the trial court had improperly interrupted him during his closing argument to the jury. The interruptions included a sidebar because of an exhibit that was displayed that the court mistakenly believed was not in evidence, and a "bathroom break." He claimed the court also appeared to be "giving very visible reactions during [his] closing argument." Defense counsel said the interruptions "affect my client's right to a fair trial."

The trial court found defense counsel's claims were without merit. It called for a bathroom break because it mistakenly believed defense counsel had completed his oral argument and it interrupted the closing because it mistakenly believed the exhibit had not been admitted into evidence. The court stated: "I corrected you in front of the jury about using the term 'any reasonable doubt' because I instructed you on the record to not use that term during voir dire."

Following the jury's guilty verdicts, defense counsel filed a motion for new trial. The motion raised the same claims about the interruptions to defense counsel's oral argument. Attached to the motion were three declarations. One was from Donovon Sides, the foreperson of the jury. He declared, among other things, that during defense counsel's argument the "judge was fidgeting in his chair," "shaking his head" and "putting his hands [on] his face." "The judge's conduct gave me the impression he was on the side of the prosecution." "The judge's conduct did not affect my ultimate decision and verdict."

The trial court denied the motion for new trial.

## DISCUSSION

### *Standard of review*

In reviewing a claim of judicial misconduct, "'we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial.' [Citation.]" (*People v. Snow* (2003) 30 Cal.4th 43, 78 (*Snow*) (overruled on other grounds in *People v. Choyce* (2025) 18 Cal.5th 86, 120; accord *People v. Seumanu* (2015) 61 Cal.4th 1293, 1321.) An appellate court determines "the propriety of judicial comment on a case-by-case basis in light of its content and the circumstances in which it occurs." (*People v. Cash* (2002) 28 Cal.4th 703, 730.)

### *Right to a fair trial*

Appellant contends the trial court's interruptions of defense counsel's argument to the jury, admonishments, and physical reactions during argument constituted judicial misconduct which deprived him of his right to a fair trial. We disagree.

""'A criminal defendant has due process rights under both the state and federal Constitutions to be tried by an impartial judge.'"" (*People v. Nieves* (2021) 11 Cal.5th 404, 498.) A violation of these rights requires proof of ""'the probability of actual bias on the part of the judge or decisionmaker [that] is too high to be constitutionally tolerable.'"" [Citation.] '[I]t is the exceptional case presenting extreme facts where a due process violation will be found.'" (*Ibid*.)

"A trial court commits misconduct if it "'persists in making discourteous and disparaging remarks to a defendant's counsel and witnesses and utters frequent comment from which the jury may plainly perceive that the testimony of the witnesses is not

4

believed by the judge."'" (*People v. Sturm* (2006) 37 Cal.4th 1218, 1238.)

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." (*Liteky v. U.S.* (1994) 510 U.S. 540, 555 [127 L.Ed.2d 474] (*Liteky*).) "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." (*Ibid.*) "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." (*Id.*, at p. 556.) There is a presumption that judges act honestly and with integrity. (*People v. Chatman* (2006) 38 Cal.4th 344, 364 (*Chatman*).)

*Interruptions of Defense Counsel's Oral Argument*

Appellant contends the trial court improperly interrupted his defense counsel's oral argument to the jury and these interruptions denied him a fair trial.

*1. The sidebar conference*

Appellant claims the trial court improperly called a sidebar conference while he was arguing. Defense counsel said, "[t]he Court . . . was unaware of which exhibits had been admitted into evidence, interrupted my PowerPoint and loudly enough for the jury to hear made comments . . . about an exhibit which was, in fact, not in evidence . . . ."

Appellant argues that "the record *seems to suggest* that defense counsel was admonished for displaying a document the trial court mistakenly thought was not in evidence . . . ." (Italics added.) But appellant concedes that the "sidebar was not reported." Appellant has the duty to produce a complete record and failed to produce a settled statement about the sidebar. We

may not presume error based on an incomplete record. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

From the record we have, appellant has not shown the calling for a sidebar was an improper attempt to disrupt defense counsel's argument. The People note the trial court's action was "ordinary courtroom administration" that was "responsive to evidentiary and legal issues." The court called the sidebar because it believed there was an exhibit that was not in evidence that was being shown to the jury. The court said, "[a]s far as the exhibit, that was an honest mistake. I made a mistake. *It wasn't intended to disrupt your closing*." (Italics added.) The prosecutor noted that the sidebar was very brief. It lasted only five to ten seconds. Appellant has shown a mistake, but not judicial misconduct.

### 2. *The trial court calling for a bathroom break*

Appellant suggests the trial court improperly called a bathroom break to disrupt defense counsel's oral argument.

During defense counsel's oral argument he stated, "if there is any doubts in your mind that are reasonable, that you have a duty to vote not guilty." The trial court then said, "All right. Does anyone need a break? Or do you want to power through and finish before lunch? Does anyone need to go to the bathroom?" Defense counsel then stated, "I'm asking each and every one of you-- --" The court said, "Sorry. I didn't know you weren't done. I apologize." Defense counsel responded: "*That's okay. I needed a little breather*." (Italics added.)

There was no judicial misconduct. The trial court did not realize that defense counsel had not finished his oral argument. Defense counsel's comments show this was not prejudicial.

6

*3. The trial court's comments about a jury instruction*

Appellant claims the trial court improperly admonished his defense counsel in front of the jury which denied him a fair trial. But "'reversal is not mandated where . . . rebukes of defense counsel reflected not upon the merits of the case but rather on the way it was being handled.'" (*United States v. Edmond* (D.C. Cir. 1995) 52 F.3d 1080, 1101, citing *United States v. DiTommaso* (2nd Cir. 1987) 817 F.2d 201, 220.)  This is especially the case where the admonition was brief and warranted.  (*People v. Houston* (2012) 54 Cal.4th 1186, 1221; *Snow*, *supra*, 30 Cal.4th at p. 78.)

During defense counsel's closing argument he said, "So I ask each and every one of you to look at the facts, determine has this been proven beyond any reasonable doubt?  Is this the kind of - -"  The trial court then stated:  "Beyond a reasonable doubt. I've admonished you before.  I've admonished you not to use that term.  It's not the correct jury instruction . . . ."

Prior to oral argument, the trial court had instructed defense counsel that when he discussed the jury instruction that he should use the exact terms used in the reasonable doubt instruction and not add terms to it.  The court was apparently concerned that adding additional terms could confuse the jury or diminish the impact of the instruction.  But during his oral argument, defense counsel repeatedly used the terms such as "*all* reasonable doubt" and "*any* reasonable doubt" instead of "a reasonable doubt."  Despite not complying with the court's instruction to defense counsel, the court did not interrupt him. When defense counsel did it repeatedly, the court intervened.

In a proceeding while the jury was deliberating, the trial court said, "I will note for the record that I corrected you in front

7

of the jury about using the term 'any reasonable doubt' because I instructed you on the record to not use that term during voir dire."  "But *you insisted to keep using that term* during your closing argument which is why I said it in front of the jury.  I admonished you.  *You continued to do so which is intentional, which is a direct violation of what the Court asked you to do . . . .*" (Italics added.)  *"I interrupted you because you're making a misstatement of the law which is not allowed and you know better."*  (Italics added.)

By correcting defense counsel about the jury instruction, the trial court was not committing judicial misconduct.  It was exercising its "courtroom administrative" authority to make sure the jury understood the jury instruction.  (*Liteky*, *supra*, 510 U.S. at p. 555-556.)

The trial court's request that the standard reasonable doubt instruction be followed was appropriate because "varying from the standard is a 'perilous exercise.'"  (*People v. Freeman* (1994) 8 Cal.4th 450, 503-504; *People v. Gottman* (1976) 64 Cal.App.3d 775, 784 ["trial courts would be well advised not to improvise on the traditional reasonable doubt instructions"].)  Defense counsel's adding the word "any" to the standard instruction could confuse jurors because "'[t]he word "any" has a diversity of meanings . . . .'"  (*Donohue v. Zoning Board of Appeals* (1967) 235 A.2d 643, 646.)

The trial court is "given great latitude" in "limiting the scope of closing summations . . ." to ". . . ensure that argument does not stray unduly from the mark."  (*Herring v. New York* (1975) 422 U.S. 853, 862 [45 L.Ed.2d 593] (*Herring*).)  Consequently, the court may interrupt defense counsel's oral argument to correct counsel's misstatement about the law (*People*

8

*v. Maciel* (2013) 57 Cal.4th 482, 539-540), or to direct counsel "to restate the law as set out in the jury instructions." (*People v. Pierce* (2009) 172 Cal.App.4th 567, 571.)

The trial court made only a few brief interruptions in defense counsel's 30-minute closing argument. It briefly corrected defense counsel's statement on the jury instruction. It did not "persistently" make "discourteous and disparaging remarks to defense counsel." (*People v. Peoples* (2016) 62 Cal.4th 718, 789-790.) It is well established that a "'trial court's numerous rulings against a party – even when erroneous – do not establish judicial bias . . .'" (*People v. Avila* (2009) 46 Cal.4th 680, 721.)

The trial court had the authority to admonish defense counsel, particularly where it believed he had repeatedly violated its order and his conduct could mislead the jury. (*Liteky, supra*, 510 U.S. at p. 555; *Herring, supra*, 422 U.S. at p. 862; *Snow, supra*, 30 Cal.4th at p. 78 [It "'is well within [a trial court's] discretion to rebuke an attorney, sometimes harshly, when that attorney . . . ignores the court's instructions . . . .'"]; see also *People v. Blacksher* (2011) 52 Cal.4th 769, 826 (*Blacksher*) [the court properly admonished defense counsel before the jury after defense counsel repeatedly tried to "elicit inadmissible evidence"]; *United States v. Balthazard* (1st Cir. 2004) 360 F.3d 309, 319 ["[W]e allow trial judges substantial discretion in determining how best to ensure attorneys behave appropriately in court"].)

*The Trial Court's Visible Reactions to Counsel's Argument*

Appellant's defense counsel alleged, "that the [trial court] appeared to have lots of visible reactions, whether it be shaking its head, leaning back or just, you know, giving visible reactions during my closing argument."

9

The trial court responded, "As far as any expressions that I was making, I don't recall any of that. I lean back in my chair all the time whether anyone is testifying, whether they're giving closing arguments. I did that when [the prosecution] was giving his closing argument. I don't believe that is something that is indicative of any sort of bias or prejudice."

We must give appropriate deference to the trial court's statements as there is a presumption that judges act honestly and with integrity. (*Chatman, supra*, 38 Cal.4th at p. 364.) Moreover, the speculative or debatable interpretation of a judge's physical reactions does not, by itself, meet the standard of showing the judge likely harbored actual bias against a party. (*People v. Freeman* (2010) 47 Cal.4th 993, 1006.) "*Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance . . . and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as . . . judges, sometimes display." (*Liteky*, *supra*, 510 U.S. at pp. 555-556.)

Appellant's motion for a new trial relied on the declaration of the jury foreperson. He declared that during defense counsel's closing arguments he saw the "judge fidgeting in his chair," "shaking his head" and "putting his hands [on] his face." But in denying the motion for new trial, the trial court explained, "perhaps some of the facial expressions that the jurors may have seen was just my frustration" with defense counsel's conduct. "[S]uch manifestations of friction between court and counsel, while not desirable, are virtually inevitable in a long trial." (*Snow*, *supra*, 30 Cal.4th at pp. 78-79.) Because they merely "were a reflection of frustration and irritation at counsel's

10

repeated" violations of its directions, "they were not improper." (*Blacksher*, *supra*, 52 Cal.4th at p. 825.)

Any alleged errors are harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705]; *People v. Watson* (1956) 46 Cal.2d 818, 836.) The jury foreperson claimed the "judge's conduct gave me the impression he was on the side of the prosecution." But he also said, "I did not discuss my observations with the other jurors." "The judge's conduct did not affect my ultimate decision and verdict." The People presented compelling evidence of guilt.

The testimony of the People's witnesses was uncontradicted. No defense witnesses testified. Judge Rhodes was an eyewitness to appellant's crimes. He saw appellant drive the stolen vehicle and the hit-and-run. Judge Rhodes followed appellant and stayed with him until the police arrived. He identified appellant in court. His testimony was supported by photographs he took during this incident. Appellant has made no adequate challenge on appeal to the evidence that supports the verdicts. The trial court's brief interruptions of defense counsel's argument involved only a small portion of the trial.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

YEGAN, Acting P. J.                    BALTODANO, J.

11

Paul W. Baelly, Judge

Superior Court County of Ventura

_____

Dan E. Chambers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Irvi and Maggie Lee, Deputy Attorneys General, for Plaintiff and Respondent.